IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

SHERRY W. DIXON                                                                                    PLAINTIFF

v.                                            CASE NO.          12-2082

CAROLYN W. COLVIN, Commissioner
of Social Security Administration                                                                  DEFENDANT

**MEMORANDUM OPINION**

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.  Procedural Background:**

The plaintiff filed her applications for DIB and SSI on March 25, 2009, alleging an onset date of March 23, 2009, due to plaintiff's fibromyalgia, depression, thoracic outlet syndrome, lower back inflamation.  Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on December 1, 2009. Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 39 years of age and possessed a GED.  The Plaintiff had past relevant work ("PRW") experience as a machine operator  (T. 189).

-1-

On , the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's DDD, functional thoracic outlet syndrome, fibromyalgia, depression and anxiety disorder did not meet or equal any Appendix 1 listing.  T. 12.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to light work with additional restrictions.  T. 14.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could  perform the requirements of representative occupation such as production and assembly worker, toy assembler and bottling line attendant.  T. 18.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id*.  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one

year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

The ALJ found that the Plaintiff had severe impairments of degenerative disc disease of her cervical spine, functional thoracic outlet syndrome[1], fibromyalgia, depression and anxiety disorder but that she did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (T. 12).

The Plaintiff does not contest this finding but asserts, for a number of reasons, that the ALJ committed error in assessing her Residual Functional Capacity. RFC is the most a person

---

[1] Thoracic outlet syndrome is caused by compressed nerves and blood vessels in the space under the collarbone and above the first rib (thoracic outlet). The compression may cause pain in the shoulder or neck and numbness in the arm or hand. http://www.mayoclinic.org/thoracic-outlet-syndrome/

can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).  "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

**A.  Subjective complaints of Pain**

In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.' " *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002))

The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they

are inconsistent with the above RFC (T. 15). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d at 714 (Iowa, 2003); *Human v. Barnhart*, 2006 WL 2422182, 3 (D.Kan.) (D.Kan.,2006)

  The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Casey*, 503 F.3d at 695 (8th Cir.2007) (citing *Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). The ALJ may discount subjective complaints when they are inconsistent with the evidence as a whole. Id. (citing Polaski, 739 F.2d at 1322). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

  The ALJ first notes that medical test failed to verify the Plaintiff's condition; specifically the NCV study performed on March 25, 2008, the cervical spine MRI performed on September 3, 2008, and other test set forth by the ALJ. (T. 15). The ALJ stated that the "absence of objective medical evidence to support the degree of severity that the claimant alleges is a factor to be considered". (Id.).

  In discussing the Plaintiff's credibility the ALJ found that Dr. Kuykendall's diagnosis of fibromyalgia was to be discounted because there was "no evidence that his has been correlated objectively by a specialist, i.e. a rheumatologist". (T. 15).

Fibromyalgia has long been recognized by the courts as an elusive diagnosis; its "cause or causes are unknown, there's no cure, and, of greatest importance to disability law, it's symptoms are entirely subjective." *Tilley v. Astrue*, 580 F.3d 675, 681 (8th Cir.2009). Symptoms of the disease include widespread pain, fatigue, disturbed sleep, and stiffness and tender spots in certain fixed locations of the body. *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.1996); Stedman's Medical Dictionary, 725 (28th ed.2006) (noting that fibromyalgia's characteristics include "chronic widespread aching and stiffness, involving particularly the neck, shoulders, back, and hips, which is aggravated by the use of the affected muscles.").

There is nothing in the law that the court has found that requires the diagnosis to be made by a rheumatologist, but, regardless, the ALJ determined that her Fibromyalgia was severe.  It is incongruous that the ALJ would determine the Plaintiff had a severe impairment and then discount the treating physician's opinion because he diagnosed that condition.

The ALJ next noted that the Plaintiff had only had conservative care.  On March 9, 2011, after the ALJ's decision, the Plaintiff was referred by her treating physician to a Neurological Specialist, Dr. Shahim.  Dr. Shahim noted that the cervical spine MRI was " a poor quality MRI but does show cervical spondylosis at C5-6 and C6-7 with nerve root compression. (T. 62). In September Dr. Shahim noted that the MRI shoes "cervical spondylosis at C5-6 with a subligamentous disc protrusion at C6-7." He also noted that the EMG study showed "mild peripheral neuropathy in the left arm".  (T. 60).  Cervical fusion was discussed in September(T. 61) and again in October 2011 (T. 58).  Dr. Shahim noted the risk of surgery, which included spinal cord or nerve root injury but he noted that because of the "severity of her symptoms, she would prefer to have surgery (Id.).  An Anterior cervical diskectomy, partial corpectomy of C5,

partial corpectormy of C6 and anterior fusion was performed on October 31, 2011. (T. 57).

Reviewing courts have the authority to order the Commissioner to consider additional evidence but "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Woolf v. Shalala*, 3 F.3d 1210 (8th Cir. 1993); *Chandler v. Secretary of Health and Human Servs.,* 722 F.2d 369, 371 (8th Cir. 1983). "To be material, new evidence must be non-cumulative, relevant, and probative of the claimant's condition for the time period for which benefits were denied, and there must be a reasonable likelihood that it would have changed the Commissioner's determination." *Woolf,* 3 F.3d at 1215. Thus, to qualify as "material," the additional evidence must not merely detail after-acquired conditions or post-decision deterioration of a pre-existing condition. *See Jones v. Callahan,* 122 F.3d 1148, 1154 (8th Cir.1997) (holding immaterial evidence detailing a single incident occurring after decision and noting proper remedy for post-ALJ deterioration is a new application).

In this case it is clear that the MRI that the ALJ relied on previously may have been misread and had more severe implications than initially diagnosed. Dr. Shahim is a specialist and as a result his opinion would have carried additional weight. Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart* 393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527.

The ALJ also discounted the Plaintiff's subjective complaints because of her ability to perform household chores and care for her seven year old (T. 15) but he ignores the fact that testimony has shown house work to be very limited, performed twice a week, for a few minutes

at a time (Tr. 92).  A claimant's ability to perform household chores does not necessarily prove that claimant capable of full-time employment." *See Ekeland v. Bowen*, 899 F.2d 719, 722 (8th Cir.1990) (*citing Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir.1989)).  *Dixon v. Barnhart* 324 F.3d 997, 1002 (C.A.8 (Ark.),2003)*.  See Brosnahan*, 336 F.3d at 677 ("[W]e have held, in the context of a fibromyalgia case, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity.").

It does not appear that the ALJ gave proper reasons to discount the Plaintiff's subjective complaints of pain.

**B.  RFC Assessment:**

The Plaintiff argues that the ALJ failed to properly consider the RFC assessment provided by the Plaintiff treating physician Dr. S. Kuykendall on May 13, 2009 (ECF No. 7, p. 7).  Dr. Kuykendall or other doctors in his clinic had treated the Plaintiff since 1997 (T.295) and documented medical records since March 2008. (T. 287).  Dr. Kuykendall's PRFC, rendered May 13, 2009,  diagnosed the Plaintiff with fibromyalgia, depression and anxiety (T. 295).  He felt she was in pain constantly and could not tolerate work stress. (Id., p. 296). He felt that she could only sit, stand/walk for less than two hours in an eight hour day (Id., p. 297), that she could never lift even less than 10 pounds (Id., p. 298), and never twist, stoop, crouch, climb ladders or stairs (Id., p. 299).

The opinion of a treating physician is accorded special deference and will be granted controlling weight when well-supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Prosch v.*

*Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000).

To counter the Physical RFC assessment by Dr. Kuykendall the ALJ had the opinion of a non-examining consultive physician Dr. Payne. Dr. Payne was of the opinion that the Plaintiff could lift 50 pounds occasionally, 25 pounds frequently, and sit, stand/walk for 6 hours in an 8 hour work day. (T. 310). He felt that she had no limits on her ability to push and/or pull (Id.) and he found no Postural Limitations (T. 311). In the Additional Comments Dr. Payne noted that the "MRI cervical spine (09/08) noted small disc protrusion C5-6, C6-7 without impingement of cord." (T. 316). Dr. Jerry Henderson affirmed Dr. Payne's opinion as written on June 10, 2009. (T. 337).

We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. See, e.g., *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). This is especially true when the consultative physician is the only examining doctor to contradict the treating physician. Id; *Cox v. Barnhart* 345 F.3d 606, 610 (C.A.8 (Ark.),2003).

The ALJ discounted the opinions of the state agency medical consultants because of "additional evidence received into the record at the hearing level and some of the testimony offered by the claimant". (T. 17). It is unclear what the medical evidence or the testimony was that was persuasive. The ALJ also stated that "Dr. Kuykendall's opinion is not supported by his own treatment notes/records and is not supported by the other medical evidence of record". (Id.). The ALJ does not specifically state how Dr. Kuykendall's opinion is unsupported.

Dr. Shahim, a neurologist, felt that the original MRI was of "poor quality" but that it

showed "cervical spondylosis at C5-6, and C6-7 with nerve root compression". (T. 62). That opinion, coupled with a subsequent cervical fusion and facet injection both pre and post operative seems to validate Dr. Kuykendall opinion. The ALJ of course did not have any opportunity to consider this evidence since it was presented after his opinion. Thus, in situations such as the present, this court's role is to determine whether the ALJ's decision "is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made." Riley, 18 F.3d at 622. In practice, this requires this court to decide how the ALJ would have weighed the new evidence had it existed at the initial hearing. See *Bradford v. Barnhart* 2003 WL 1811534, 12 (D.Neb.) (D.Neb.,2003).

The court believes that remand is necessary to allow the ALJ to consider the newly presented evidence and to obtain a consultive examination.

### IV.  Conclusion:

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated this April 15, 2013.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE